IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DONNA DESTEFANO,

    Plaintiff,

  v.             No.  CV-10-6123-HZ

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,     OPINION & ORDER

    Defendant.


Mike Stebbins
STEBBINS & COFFEY
745 California Street
North Bend, Oregon 97459

   Attorney for Plaintiff

Dwight C. Holton
UNITED STATES ATTORNEY
District of Oregon


1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

David R. Johnson
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S/ 901
Seattle, Washington 98104-7075

          Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Donna Destefano brings this action on behalf of her deceased husband, claimant

Robert Destefano[1], seeking judicial review of the Commissioner's final decision to deny

disability insurance benefits (DIB).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  I

affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on September 28, 2006, alleging an onset date of September 30,

2003.[2]  Tr. 81-86.  His applications were denied initially and on reconsideration.  Tr. 48-54, 56-

59.

     On January 14, 2008, plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ).  Tr. 25-47.  On February 27, 2008, the ALJ found plaintiff not

disabled.  Tr. 14-24.  The Appeals Council denied review.  Tr. 1-4.

---

    [1]  I join the parties in referring to plaintiff and the deceased claimant collectively as
"plaintiff."

    [2]  Plaintiff currently alleges an onset date of October 14, 2005.  Pltf's Mem. at p. 2.

2 - OPINION & ORDER

FACTUAL BACKGROUND

Plaintiff alleges disability based on having Hepatitis C.  Tr. 56, 107.  At the time of the

hearing, he was fifty-nine years old.  Tr. 29.  He is a high school graduate and has past relevant

work experience as a printing pressman and as an owner/manager of a motel.  Tr. 108.  Because

the parties are familiar with the medical and other evidence of record, I refer to any additional

relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL EVALUATION FOR DISABILITY

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Commissioner, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

3 - OPINION & ORDER

preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful

activity since his alleged onset date through his date of last insured.  Tr. 19.  Next, at step two,

the ALJ determined that plaintiff did not have a severe impairment or combination of

impairments before his date of last insured.  Tr. 20-24.  As part of that determination, she

considered the medical evidence, plaintiff's hearing testimony, and the testimony of plaintiff's

wife.  Id.  As a result of finding no severe impairment or combination of impairments, the ALJ

concluded that plaintiff was not disabled without discussing steps three through five.  Tr. 24-25.

## STANDARD OF REVIEW

I may set aside the Commissioner's denial of benefits only when the Commissioner's

findings are based on legal error or are not supported by substantial evidence in the record as a

whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Vasquez, 572 F.3d at 591; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Id. (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

## DISCUSSION

Plaintiff generally contends that the ALJ erred in concluding that he was not disabled before March 31, 2006, his last insured date.  Specifically, he contends that the ALJ (1) ignored relevant medical evidence in the record, (2) failed to credit the opinion of his treating physicians, (3) improperly determined that plaintiff's testimony regarding his functional limitations was not credible, and (4) improperly rejected plaintiff's wife's testimony.

Plaintiff does not dispute that his date of last insured (DLI) is March 31, 2006, Tr. 19, or that he has the burden of proving that he became disabled while he had "insured status." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  I address plaintiff's arguments in turn.

I.  Medical Evidence Re: Hepatitis C

Plaintiff testified that he was diagnosed with Hepatitis C in 2003.  He began treatment with interferon and ribavirin in January 13, 2004, at the "Diagnostic Clinic" in Largo, Florida,

where he lived at the time.  Tr. 178.  The first office visit record in the administrative record,

dated April 23, 2004, indicates that at that time, plaintiff reported mild fatigue and mild muscle

soreness.  Id.  His depression had "somewhat lifted."  Id.  On physical examination, he was in no

acute distress, with no other remarkable findings.  Id.  Nurse Practitioner Michael Davis planned

to continue the interferon/ribavirin treatment and to see plaintiff again in six weeks.  Id.  On May

14, 2004, Davis noted that plaintiff still had some mild depression and grouchiness, but did not

need any additional medication.  Tr. 177.  Plaintiff's viral load was undetectable.  Id.

On June 18, 2004, plaintiff reported continued fatigue and malaise, although he was

tolerating his medications quite well.  Tr. 176.  He had no severe emotional symptoms.  Id.  He

was due to complete the interferon/ribavirin treatment in three weeks.  Id.

Plaintiff's final office visit with the Florida clinic was on July 16, 2004.  Tr. 175, 205-06.

At the end of his interferon/ribavirin treatment, plaintiff had an undetectable viral load.  Tr. 175.

However, Davis had some concerns about an abnormal liver function test and plaintiff's blood

counts, although Davis further noted that it was very common for the blood counts to take four to

six weeks to rebound after the conclusion of the drug treatment.  Id.  Davis urged plaintiff to stay

in the area for follow up because of these abnormal test results.  Id. He explained that plaintiff

would need follow up laboratory work to test his Hepatitis C viral load to see if he had a

sustained virologic response to the interferon/ribavirin treatment therapy.  Tr. 175.  Plaintiff told

Davis he was leaving in an RV and would be gone for one year.  Id.  Davis asked plaintiff to

establish a relationship with a physician who could monitor his blood work and work with him at

least through the six-month period following his interferon/ribavirin treatment.  Id.

Fifteen months later, on October 14, 2005, plaintiff had a HEPTIMAX (TM) test to check

his Hepatitis C viral load. Tr. 279-83. The results showed abnormal values. Id. On December

12, 2005, Davis, of the Florida clinic, entered a "nurse note" in plaintiff's chart, indicating that he

had called plaintiff to tell him that plaintiff's HEPTIMAX was outside normal limits. Tr. 283.

Although Davis indicated that plaintiff "may" make an appointment with Davis for further

information, the note indicates that plaintiff was living on the west coast. Id. Dr Michael

Stenzel, M.D., the supervising physician at the Florida clinic, explained that the October 14,

2005 HEPTIMAX test showed that plaintiff's interferon/ribavirin treatment, while producing no

detectable viral load at its conclusion, did not produce a sustained response. Tr. 284.

This is the only medical evidence in the administrative record before plaintiff's DLI.

However, on May 24, 2006, about seven weeks after plaintiff's DLI, plaintiff established a

treating relationship with Dr. William McDougall, D.O., in Crescent City, California. Tr. 258.

Plaintiff initially saw Dr. McDougall for a "general medical evaluation and medication," at the

urging of his wife. Id. His primary complaint was weight gain. Id. Plaintiff reported his past

history of Hepatitis C. Id. After a physical examination, Dr. McDougall noted that plaintiff had

a history of Hepatitis C, status post chemotherapy. Tr. 260. He also assessed plaintiff as having

an umbilical hernia, hypertension, and undesirable weight gain. Id. He planned on referring

plaintiff for a hernia repair and colonoscopy, and completing various lab tests. Id. He had a

detailed discussion with plaintiff regarding plaintiff's diet. Id. Lab tests conducted on May 31,

2006 showed that plaintiff had continued high Hepatitis C viral load levels. Tr. 257, 267.

Subsequently, in a June 11, 2007 letter to Social Security Disability, Dr. McDougall offered his

opinion regarding plaintiff's disability status before plaintiff's DLI:

[Plaintiff] has a history of unsuccessfully treated hepatits C diagnosed in 2003,

7 - OPINION & ORDER

having undergone treatment with interferon and ribavirin from January 2004 to July 2004. During the time of his chemotherapy and for a protracted period of time afterwards, Mr. Destefano experienced severe depression, severe myalgias, anorexia, and many other side effects associated with interferon and ribavirin administration; however, his convalescent period seemed to be significantly longer than one would normally expect it to have been. Per his history, he did not experience any significant improvement until what he describes as a time period [in] approximately October 2005.

At this time he has a very high hepatitis C RNA quantitative RCR analysis at 3,400,000 IU of virus/mL as of May 2006. He suffers from chronic fibromyalgia pain, chronic fatigue, and hypertension that is poorly controlled at this time. Because of the fatigue and depression he is still unable to maintain routine work. It is my belief that he has not worked to any steady degree since 2004. It is my belief that his disability would extend from 2004 until now.

Tr. 204.

The ALJ noted that the evidence for the period through the DLI consisted only of a few chart notes from January through July 2004. Tr. 20. There were no records of any treatment from July 2004 until May 24, 2006, after the March 31, 2006 DLI. Id. The ALJ stated that when Dr. McDougall examined plaintiff on May 24, 2006, plaintiff reported that he was free of fatigue and weight loss, and he denied arthralgias or myalgias. Id.; Tr. 259. Apart from the hernia symptoms, plaintiff's physical examination was unremarkable. Id.; Tr. 259.

The ALJ further noted that plaintiff's initial interferon treatment was successful in eliminating plaintiff's viral load, with no actual documentation of recurrence through the date last insured. Tr. 22. She noted that there was no evidence to support that plaintiff experienced meaningful limitations as a result of his disease. Id. She cited the record indicating that in April 2004, during treatment, plaintiff reported only mild fatigue and muscle aches and that his depression had lifted. Id. He continued to make similar reports during his treatment. Id.

The ALJ found plaintiff's plans for extensive traveling to be inconsistent with his claim of

disabling fatigue.  Tr. 23.  She also noted that even when he re-started medical treatment, after his DLI, it was at his wife's urging and the pressing concern was weight gain.  Id.  He denied fatigue, depression, and joint and muscle soreness.  Id.  No functional limitations were ascribed to plaintiff's hernia.  Id.

The ALJ gave little weight to Dr. McDougall's opinion expressed in his June 2007 letter. Tr. 23-24.  The ALJ noted that although Dr. McDougall became plaintiff's treating physician, he did not begin to treat plaintiff until after plaintiff's insured status expired and he had no experience treating plaintiff contemporaneous with plaintiff's insured status.  Id.  Dr. McDougall also relied on plaintiff's own description of his condition, including references to severe depression, severe myalgias, and other side effects of the interferon treatment.  Id.  But, the ALJ explained, the records from Florida during that period did not support these limitations, because they referred only to mild depression and mild arthralgias.  Id.  The ALJ also noted that Dr. McDougall's opinion was undermined by plaintiff's own denials of such symptoms during his treatment with Dr. McDougall, especially considering that after his initial visit, plaintiff's subsequent treatment had been for matters such as the hernia, or trauma following a motorcycle accident.  Tr. 24.  The ALJ also noted that Dr. McDougall's reference to fibromyalgia pain was not supported in the record.  Id.  The ALJ determined that the available evidence "contains little to show that the Claimant was more than minimally limited by his impairments, and even then for only a few months."  Tr. 20.

Plaintiff argues that the ALJ erred when she stated that following the completion of his interferon/ribavirin treatment, there was no actual documentation of recurrence of plaintiff's Hepatitis C viral load through the date of his last insured.  Plaintiff contends that this mistaken

9 - OPINION & ORDER

finding allowed the ALJ to improperly ignore plaintiff's and his wife's testimony, as well as Dr.
McDougall's opinion regarding plaintiff's disability.  As a result, plaintiff argues that the ALJ's
decision is not supported by substantial evidence.

I agree with plaintiff that the ALJ misstated the evidence in the record when she stated
that following plaintiff's interferon/ribavirin treatment which eliminated plaintiff's viral load,
there was "no actual documentation of recurrence through the date last insured."  The lab tests
done in October 2005, five months before plaintiff's DLI, show an increased viral load.  Davis
informed plaintiff of this in December 2005.

Nonetheless, I affirm the Commissioner's decision because the presence of an increased
viral load during the insured period, without any evidence demonstrating limitations caused by
that increase, does not, by itself, establish disability.  As the ALJ explained, although Davis told
plaintiff of the increased viral load in December 2005, he expressed no urgent need to seek
medical attention and plaintiff failed to seek any medical treatment until May 2006, after his DLI.
Importantly, at that time, his medical complaint was weight gain with no reports of fatigue, pain,
or emotional distress.

Disability is not awarded on the basis of a diagnosis alone.  At step two, the  ALJ
considers the severity of the claimant's impairment(s).  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).  If the claimant does not have a severe medically determinable physical or
mental impairment that meets the duration requirement, or a combination of impairments that is
severe and meets the duration requirement, the claimant is not disabled.  Id.

A severe impairment is one that significantly limits the claimant's physical or mental
ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

10 - OPINION & ORDER

activities" are the abilities and aptitudes necessary to do most jobs, including physical functions

such as walking, standing, sitting, and lifting.   20 C.F.R. §§ 404.1521(b), 416.921(b).  In Social

Security Ruling (SSR) 96-3p (available at 1996 WL 374181, at *1), the Commissioner has

explained that "an impairment(s) that is 'not severe' must be a slight abnormality (or a

combination of slight abnormalities) that has no more than a minimal effect on the ability to do

basic work activities."

     To go beyond step two, plaintiff has the burden of establishing that his disease creates

more than a minimal effect on the ability to do basic work activities.  See Carmickle v.

Commissioner, 533 F.3d 1155, 1164-65 (9th Cir. 2008) (when the medical record did not

establish any work-related limitations as a result of the claimant's carpal tunnel syndrome

impairment, the ALJ did not err in concluding that it was not a "severe" impairment at step two).

The October 2005 lab result, by itself, reveals nothing about plaintiff's limitations during the pre-

DLI period and thus, while the ALJ mistakenly stated that there was no evidence of an increased

viral load after the conclusion of his interferon/ribavirin treatment before his DLI, this was

harmless error because the issue is not whether plaintiff had an increased viral load, but how it

affected him.

## II.  Dr. McDougall's and Dr. Stenzel's Opinions

     Next, plaintiff argues that the ALJ improperly failed to credit Dr. McDougall's June 2007

opinion that plaintiff was disabled from 2004 to June 11, 2007, the date of Dr. McDougall's

letter.  Tr. 204.  Plaintiff also argues that the ALJ improperly failed to credit Dr. Stenzel's opinion

that "it is very well possible" that plaintiff experienced recurrent symptoms of his Hepatitis C

infection, including fatigue, lassitude, lack of energy, and emotional instability.  Tr. 284.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id. If the treating physician's opinion is not contradicted, the ALJ may reject it only for "clear and convincing" reasons. Id. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and substantial reasons" which are supported by substantial evidence in the record. Id. The weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received. 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii).

Here, assuming for the purposes of this Opinion that both Dr. McDougall and Dr. Stenzel were treating physicians, the ALJ did not err in failing to credit their opinions.

A. Dr. McDougall's Opinion

As noted above, the ALJ gave "little weight" to Dr. McDougall's June 11, 2007 opinion. Tr. 23. As she explained, he was not the treating physician during the insured period, the medical records during that period show only mild depression, mild arthralgias, and well-tolerated treatment, his reference to fibromyalgia pain is not supported in the record, and his own medical records of his treatment of plaintiff do not support a finding of disabling depression or fatigue. Tr. 23-24.

The opinion of a physician that a claimant is disabled is not binding on the ALJ's ultimate determination of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Rather, the disability determination is a legal conclusion reserved to the Commissioner. The ALJ did not

12 - OPINION & ORDER

err in rejecting Dr. McDougall's opinion regarding plaintiff being disabled frm 2004 until June 11, 2007.

As to the remaining statements in Dr. McDougall's letter, the ALJ provided clear and convincing reasons for not relying on them. Dr. McDougall's statements are unsupported by the record given that no records from the relevant time period document any of the symptoms Dr. McDougall alleges plaintiff suffered during that time, Dr. McDougall's own medical records (beginning several weeks after plaintiff's DLI) reveal no severe symptoms related to plaintiff's Hepatitis C, and Dr. McDougall relied on plaintiff's self-report of symptoms which, as discussed below, the ALJ found not credible. The ALJ's rejection of Dr. McDougall's opinion was not error. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradictions between the doctor's assessment of a claimant's abilities and the doctor's clinical notes, observations, and opinions of the claimant's capabilities is a clear and convincing reason for not relying on the doctor's opinion).

B. Dr. Stenzel's Opinion

In an August 13, 2008 letter, Dr. Stenzel wrote that given plaintiff's October 2005 lab results showing an increase in his Hepatitis C viral load, "it is very well possible that Mr. Destefano experienced recurrent symptoms of chronic Hepatitis C virus infection with recurrent viremia expressed in fatigue, lassitude, and lack of energy and also emotional instability. The patient had been advised to seek follow-up care." Tr. 284.

Plaintiff argues that the ALJ erred in failing to credit Dr. Stenzel's opinion regarding plaintiff's symptoms. I disagree. Dr. Stenzel never examined plaintiff during the relevant time period. His opinion indicates only that it might have been possible that plaintiff experienced

13 - OPINION & ORDER

certain symptoms.  No medical records support his opinion.  Accordingly, Dr. Stenzel's opinion

is not significant or probative evidence requiring consideration by the ALJ.

III.  Plaintiff's Testimony

      The ALJ noted that plaintiff testified he had two to three "good" days per week, and that

generally he was extremely fatigued and tired easily.  Tr. 19.  She acknowledged his testimony

that (1) his chores were limited to unloading the dishwasher and shopping with his wife, (2) he

owned a motorcycle but had not ridden it since one year before the hearing, (3) he attempted to

work as a pressman at a newspaper in August and September 2006, but resigned because he

believed he could not adequately perform the job,  (4) he stopped operating a motel and sold it

because he could not keep up with the work involved, and (5) he could stand or walk only up to

two hours.  Id.

      The ALJ stated that although plaintiff emphasized the issue of fatigue in his testimony,

the record did not show that fatigue was causing practical limitations for plaintiff through his

DLI.  Tr. 22.  As to the motel work, the ALJ stated that while plaintiff testified he was too ill to

continue operating the motel, plaintiff's wife testified that the job required working sixteen hours

per day.  Tr. 22.  Consequently, the ALJ explained that plaintiff's inability to sustain that level of

work did not establish an inability to work eight hours per day or forty hours per week.  Id.

      The ALJ rejected plaintiff's testimony for the additional reason that his plan for extensive

traveling after completing his interferon/ribavirin treatment was inconsistent with an allegation of

significant post-treatment fatigue.  Tr. 23.  Additionally, when he did seek medical treatment

next in May 2006, it was not because of symptoms of fatigue, but was at his wife's urging as a

result of his weight gain.  Id.  Notably, the ALJ stated, plaintiff denied fatigue, depression, and

the presence of arthralgias and myalgias at his initial examination with Dr. McDougall.  Id.

Next, the ALJ noted that the medical records of a July 2007 motorcycle accident contradicted plaintiff's testimony that was too ill to engage in that activity, and that his return to work in 2006 indicated that at least at that time, he felt well enough to work at an exertionally demanding pressman job.  Tr. 23.  Although he resigned because he was dissatisfied with his work and believed he could not perform the job, he received no complaints from his employer about his performance.  Id.

The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  Carmickle, 533 F.3d at 1160 (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment.  Id.

The ALJ provided clear and convincing reasons, based on substantial evidence in the

15 - OPINION & ORDER

record, for rejecting plaintiff's subjective limitations testimony.   She cited the conflict between

plaintiff's activities and his alleged disabling fatigue, the lack of any treatment during the relevant

time period, and the lack of support in the medical records for any report by plaintiff of disabling

symptoms.  The ALJ did not err in failing to credit plaintiff's testimony.

IV.  Lay Witness Testimony

        The ALJ noted that plaintiff's wife testified that they had worked sixteen hours per day at

their motel, that plaintiff had appeared to be weakening, that he went "downhill" during his

interferon/ribavirin treatment, that it took one year before he improved, that he had not gone back

to his doctors because he was "fed up" with them, and that at the time of the hearing, he had

about three bad days per week, had to be pushed to do things, and took naps, watched television,

went shopping, and puttered around the garage.  Tr. 19.

        The ALJ found plaintiff's wife's testimony regarding the presence of any severe

impairments not credible for the same reasons that the plaintiff's own testimony was not credible.

Tr. 24.  The ALJ specifically highlighted plaintiff's wife's testimony that plaintiff had no

improvement regarding his symptoms for one year after treatment.  The ALJ concluded that such

testimony was "particularly inconsistent" with the resolution of his virus before treatment ended

and his lack of attempts at treatment generally or for any subjective symptoms through the

remainder of the DLI.  Id.  The ALJ also specifically rejected plaintiff's wife's testimony that

plaintiff had no medical improvement until some time in 2005 because this was not supported by

the record and was inconsistent with the plans for extensive traveling.

        An ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses.  Valentine, 574 F.3d at 694.  The ALJ rejected plaintiff's wife's testimony because

16 - OPINION & ORDER

it was inconsistent with plaintiff's activities (traveling), was inconsistent with his lack of treatment, and was not supportable for the same reasons that the ALJ found plaintiff's subjective testimony not supportable.  Contrary to plaintiff's argument, the ALJ did not need to re-articulate each and every reason she had previously given for rejecting plaintiff's testimony, when she concluded that plaintiff's wife's testimony should be rejected for the same reasons.  Referring to the previously articulated reasons for rejecting plaintiff's testimony does not make the ALJ's reasons for rejecting plaintiff's wife's testimony "un-germane" to that witness.  The ALJ did not err in rejecting plaintiff's wife's testimony.

The Commissioner's decision to deny DIB is supported by substantial evidence in the record.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this  28th   day of  March                , 2011


 /s/ Marco A. Hernandez                      
Marco A. Hernandez
United States District Judge


17 - OPINION & ORDER